UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE T. HARRIS,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>ELI LILLY & COMPANY,<br><br>　　　　　Defendant. | Civil Action 03-02208 (HHK) |

MEMORANDUM OPINION

Jacqueline Harris brings this action against her employer, Eli Lilly and Company ("Eli Lilly"), a manufacturer and distributor of pharmaceuticals, alleging that it discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("§ 1981"). Before the court is Eli Lilly's motion for summary judgment [#34]. Upon consideration of the motion, the opposition thereto, the summary-judgment record, and the argument of counsel at a hearing, the court concludes that Eli Lilly's motion must be granted.

I.  FACTUAL BACKGROUND

Harris, a Black woman, has been employed as a sales representative for Eli Lilly since 1989. As a sales representative, Harris is expected to call on physicians to promote Eli Lilly products, organize a specific number of speaker programs each year, comply with administrative

obligations,[1] attend district meetings, and participate in weekly district conference calls. Her duties have remained essentially the same throughout her employment with Eli Lilly.

During her time at Eli Lilly, Harris has been denied particular promotional opportunities, has been issued a written warning regarding her sales performance, and has been denied an opportunity to shadow an employee who holds the position she desires. Harris makes clear, however, that her complaint "is not about" these specific acts. Pl.'s Opp'n at 22. Rather, Harris asserts that during the time she was supervised by Greg Johnson—from 1996 until 1997 and again from late 1998 until 2004—he discriminated against her, because of her race, by not supporting her for promotion, by "making subjective and unfair criticisms of her performance," *id.* at 14, and by denying her certain career developmental opportunities.[2]

While Harris has been moved to higher salary classes at least twice and named a Senior Sales Representative, these were not career *promotions* in that they did not affect her job responsibilities. Harris argues, and Eli Lilly concedes, that career promotions are more desirable than salary increases because they increase the maximum pay available to a sales representative. Depending on the promotion sought, employees in Eli Lilly's sales organization become eligible for promotion by excelling in terms of quantitative and qualitative results. "[M]ere satisfactory performance is insufficient." Def.'s Mot. at 4.

---

[1] These administrative duties include checking e-mail daily, preparing call and expense reports, tracking and accounting for samples, preparing customer-based action plans, and responding to the inquiries of her supervisors.

[2] The developmental opportunities that Harris asserts Johnson denied her include the opportunity to make presentations at meetings and to mentor new sales representatives. Pl.'s Opp'n at 14–16.

In general, applying for a career promotion at Eli Lilly involves a two-step process: first, an employee must notify her manager of her intent to apply and then post her application on Eli Lilly's job posting system.[3] Once the application is posted, the employee competes with others around the country for the promotion. The job posting process is a competitive process through which hiring managers select the "best qualified applicant out of those who post for a particular position." *Id.* at 3. There is no evidence to suggest that Harris was ever precluded from using Eli Lilly's job posting system to apply for any position she desired.[4] In fact, on at least one occasion in 1999, Harris used the system despite the fact that she did not have Johnson's support for the position sought.

Eli Lilly regularly holds Human Resource Planning ("HRP") meetings, during which management and human resource personnel discuss the prospects for promoting various sales representatives. Harris insists that she has never been promoted because Johnson has neither brought up her name for discussion at one of these HRP meetings nor otherwise supported her requests for promotions. On multiple occasions during the relevant time period, Johnson has told Harris why he refused to support her requests for promotions. For example, in 1996, Johnson responded to a request by Harris to be considered for a speciality sales representative position by

---

[3] Eli Lilly's job posting system is available to all Eli Lilly employees and contains computerized information concerning all of Eli Lilly's job openings across the country.

[4] Harris argues that employees need the support of their supervisors to apply for a vacant job. The record evidence does not support this contention. Valerie Martin, a human resources representative at Eli Lilly, specifically testified without contradiction that "the job posting is available to anyone who is an employee of Eli Lilly and Company. So anyone can go on job postings and post for a position." Pl.'s Opp'n, Ex. 3, at 40:2–5. Martin acknowledges, however, the general rule that an employee needs the support of her manager to "be a successful candidate." This acknowledgment does not undermine the conclusion that Harris was free to apply for whatever promotion she wanted.

informing her that he could not support her given her poor sales results, productivity, and behavior. Also, in 1999, Johnson refused to support Harris's application for a Business to Business ("B2B") Account Executive position. The B2B group is a "specialty group of sales representatives that call on managed care organizations and work to get Lilly products on their formularies." Def.'s Mot. at 7. Positions with this group are difficult to obtain and are "reserved for those Lilly considers to be the best of the best in terms of their demonstrated sales performance." *Id.* at 8. At the time she applied, Harris held a Tier 1 primary care position; the B2B job she sought was a Tier 4 position. Based on the "highly unusual" prospect of moving from a Tier 1 to a Tier 4 position and on his previous observations of Harris's performance, Johnson did not support Harris's application and she was never offered the job. *Id.*[5]

Moreover, Johnson has repeatedly informed Harris that she failed to meet his expectations with regard to sales performance, both quantitatively and qualitatively. After spending a day working together in the field in September 1999, Johnson observed that Harris did not meet the company's expectations regarding number of daily sales calls, failed to meet the district-wide goal regarding number of physician visits, and had below average sales results. On November 30, 1999, Johnson sent an e-mail to Harris explaining that her sales performance was unacceptable and that she continued to be below the district average in terms of percentage of customers sampled, numbers of sales calls made, lunches and programs attended, and medical letters sent. For 1999, Harris's composite sales ranking was 407th out of the 500 sales representatives in her sales division. Johnson again wrote Harris in May 2000, noting that he had

---

[5] In November 2002, Johnson informed Harris about a vacant Tier 2 position. Harris responded by indicating that she was not interested because the vacant position was a lateral move and did not immediately move her into a higher salary class. Def.'s Mot., Ex. 1-18.

not received a number of requested documents and reiterating that Harris's productivity was below expectations in terms of average sales calls per day.[6]

On April 9, 2001, Eli Lilly issued Harris a written warning for unacceptable work performance. The warning was based on Harris being late in transmitting several reports to the district office, being late for or missing appointments, making errors or being tardy in reporting customer calls, and not meeting expectations in terms of sales calls. Harris concedes that the concerns noted in the warning letter were accurate. Def.'s Mot., Ex. 3 ("Harris Dep.") 198:11–202:2.[7]

Later that summer, Harris asked Johnson if she could shadow a B2B Account Executive in order to get an idea of what the job was like. Johnson refused to approve this request, stating that "it would be counterproductive for [Harris] to take a day out of her territory to do the ride-along because she needed to work on her current sales results." Def.'s Mot. at 11.

Harris filed a civil complaint in 2003, alleging that Eli Lilly violated Title VII and § 1981 by "denying her job development and promotional opportunities in the company." Compl. ¶ 1. In February 2005, this court granted Eli Lilly's motion to dismiss in part, ruling that many of Harris's claims in her complaint were barred by the applicable statutes of limitations.[8] Since that

---

[6] By the end of that year, Harris's composite sales ranking improved; she was ranked 187th out of 500 for 2000.

[7] The only clarification that Harris makes with regard to the contents of the 2001 warning letter is that she believes that the reference to being late for an appointment more accurately should have been described as failing to cancel an appointment because she was running late. Harris Dep. 200:2–201:17.

[8] In the court's memorandum opinion resolving Eli Lilly's motion to dismiss, the court held that the only Title VII claim that survived Eli Lilly's motion to dismiss was Harris's allegation that Johnson's refusal, in August 2001, to allow Harris to shadow a B2B Account

time, Harris has clarified that her complaint is "not about Mr. Johnson's discrete acts of giving her a written warning, denying her a shadowing exercise, or even the denial of a specific job." Pl.'s Opp'n at 22.[9]  Rather, Harris believes that Johnson discriminated against her "with respect to the developmental opportunities he denied her and which ultimately destroyed her career advancement." *Id.*

## II. ANALYSIS

Eli Lilly moves for summary judgment, arguing that the undisputed material facts entitle it to judgment as a matter of law.[10]  Specifically, Eli Lilly contends that summary judgment is

---

Executive was motivated by Harris's race.  With regards to liability under § 1981, causes of action based on three events survived Eli Lilly's motion: (1) Johnson's issuance of a warning letter to Harris in March 2001; (2) Eli Lilly's failure to promote Harris in May 2001; and (3) Johnson's denial of Harris's request to shadow another employee in August 2001.

[9] Given this concession by Harris, the court is not required to reach the issue of whether Eli Lilly violated Title VII or § 1981 by issuing the written warning and refusing to allow Harris to shadow a B2B Account Executive.  However, were the court to address these issues, it would conclude that Harris failed to establish a *prima facie* case of discrimination with regard to these employment actions because she failed to present evidence from which an inference of discrimination arises.

[10] Under FED. R. CIV. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50 (citations omitted).

appropriate because Harris has neither established a *prima facie* case of discrimination with regard to Johnson's asserted failure to provide developmental opportunities, nor has she rebutted Eli Lilly's legitimate nondiscriminatory reasons for its actions.

### A.  *McDonnell Douglas* Standard

Harris claims that Johnson's failure to support her career development violated both Title VII and § 1981.  Title VII makes it unlawful for an employer to discriminate against an individual on the basis of race.  42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race.").  Section 1981 provides that "All persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ."  42 U.S.C. § 1981(a).  Section 1981 claims "most commonly involve contracts of employment."  *Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 44 (D.D.C. 2003).

At the summary judgment stage of Title VII and § 1981 litigation, claims of disparate treatment are governed by the procedural framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Brown v. Brody*, 199 F.3d 446, 452–53 (D.C. Cir. 1999); *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225, 1232 (D.C. Cir. 1984).  Under this framework, a plaintiff must first make out a *prima facie* case of race-based discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff meets this burden, a presumption is created that the employer discriminated unlawfully.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The burden then shifts to the defendant to provide a legitimate

nondiscriminatory reason for the adverse employment action. The burden on the defendant is merely one of production, not persuasion. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288–89 (D.C. Cir. 1998) (en banc). Once the defendant meets this burden, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's asserted legitimate reason is false, a lie, or that the employer's real motivation was discriminatory, such that a fact finder could infer discrimination. *Id.* at 1289–90. The plaintiff at all times retains the ultimate burden of persuasion. *Burdine*, 450 U.S. at 253.

**B. Harris's Claim**

Harris argues that, contrary to Eli Lilly's characterization, she is a "successful and productive Sales Representative" whose career growth has been "stymied" by Johnson's failure to give her "the guidance and support necessary to get her to the next level." Pl.'s Opp'n at 23. According to Harris, Johnson regularly gives such support to white employees. Harris argues that Johnson's failure to support her for a promotion violated both Title VII and § 1981.

Harris, however, fails to meet her burden of establishing a *prima facie* case that her manager's lack of support violated Title VII and § 1981. A *prima facie* case of race discrimination is established when a plaintiff shows: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002); *Hopkins v. Women's Div.*, 284 F. Supp. 2d 15, 22 (D.D.C. 2004). Although Harris's burden at this stage is "not onerous," *Burdine*, 450 U.S. at 253, she has nonetheless failed to establish a *prima facie* case of discrimination.

An "adverse employment action" is defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). To be sufficiently adverse, the employment action must be significant enough "such that a reasonable trier of fact could conclude that the plaintiff has suffered *objectively tangible harm*." *Brown*, 199 F.3d at 457 (emphasis added). "Employment actions which, for instance, result in a loss of status, a bruised ego, or a few poor work assignments do not rise to the level of adverse employment actions." *Carroll v. England*, 321 F. Supp. 2d 58, 69 (D.D.C. 2004)

Here, Harris argues that Johnson's lack of support, criticism, and failure to provide "developmental opportunities" constitute adverse employment actions because "she was unable to advance without the support of Mr. Johnson." Pl.'s Opp'n at 25. Importantly, Harris never argues that these things, *by themselves*, constitute objectively tangible harm. Nor could she, for the evidence fails to suggest that this asserted criticism, lack of support, and refusal to provide opportunities for career development independently affected the terms, conditions, or privileges of Harris's employment. *See Bryant v. Brownlee*, 265 F. Supp. 2d 52, 61–62 (D.D.C. 2003) (holding that inconsequential work assignments and criticism of job performance do not rise to the level of adverse employment actions); *see also Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (noting "the long-held rule that Title VII . . . refers to ultimate employment decisions, and not to an 'interlocutory or mediate' decision which can lead to an ultimate

decision"); *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (same).[11]  Rather, Harris makes clear that the harm suffered as a result of Johnson's lack of support and asserted denial of developmental opportunities was the fact that she was never promoted. *See, e.g.*, Pl.'s Opp'n at 1 ("[D]evelopmental opportunities are crucial because they are inextricably tied to a Sales Representative's ability to advance in her career."); *id.* at 2 (developmental opportunities are "critical for career promotions"); *id.* at 3 (Johnson's actions "prevented Ms. Harris from advancing in the company."); *id.* at 16 ("Johnson's refusal to give her such opportunities blocked her from progressing in her career.").

At its core then, Harris suggests that she suffered an adverse employment action because, as a result of Johnson's actions, she was never promoted.  Such a claim, however, is completely undermined by the fact that Harris only applied for one promotion during the relevant time period and never disagrees with Eli Lilly's assertion that she was unqualified for that position. Harris specifically testified that the sole promotion that she was interested in and for which she

---

[11] Moreover, even were the court to assume *arguendo* that these actions constitute "adverse employment actions," the court would nonetheless conclude that Eli Lilly is entitled to summary judgment in light of the legitimate nondiscriminatory reasons for its actions, all of which are documented by record evidence.  Specifically, Eli Lilly cites the numerous negative performance evaluations of Harris, all of which are based on both objective and subjective evidence.  Harris never rebuts the complaints in these evaluations with credible evidence.  Nor does she meet her burden of establishing that there is a triable issue of fact as to whether Johnson's asserted failure to support her and provide her with "developmental opportunities" was due to her race.

Harris's main argument for why an inference of discrimination exists such that summary judgment is inappropriate is that Eli Lilly assertedly employed subjective and unwritten policies regarding promotion.  *See* Pl.'s Opp'n at 27–29.  As Eli Lilly correctly notes, "the fact that subjective assessments are involved is not per se evidence of discrimination." Def.'s Reply at 12 (citing *Carter v. George Washington Univ.*, 180 F. Supp. 2d 97, 104 (D.D.C. 2001) ("A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion.")).

applied was the B2B Account Executive position. *See* Harris Dep. 78:8–16 ("Q. Are there any other promotions that you are interested in other than the business to business account executive positions? A. Can you clarify the question? Q. I'm just asking you if there are any other positions you are interested in that you would consider promotions other than the business to business account executive position. A. No."). In its motion for summary judgment, Eli Lilly explains in detail that Harris was not qualified for this position. *See* Def.'s Mot. at 17–26; *see Carter v. George Wash. Univ.*, 387 F.3d 872, 881 (D.C. Cir. 2004) ("To make out a *prima facie* case in this circuit," a plaintiff must show that "she is qualified 'relative to the entire pool from which applications are welcome.'") (quoting *Mitchell v. Baldrige,* 759 F.2d 80, 85 (D.C. Cir. 1985)). Rather than dispute these contentions, Harris simply states that "no one ever explained" to her the qualifications for the position before she applied and clarifies that her complaint "is not about . . . the fact that she was denied the B2B position." Pl.'s Opp'n at 12–13.

In *Carroll v. England*, this court recognized that a "threshold requirement for a *prima facie* case when a plaintiff alleges that she was not promoted because of unlawful discrimination is that the plaintiff actually applied for the position denied her." 321 F. Supp. 2d at 67; *see also Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003) (finding that "an element of a *prima facie* case of non-promotion is that the plaintiff applied for and was denied an available position for which he/she was qualified").[12] Because Harris only applied for one position during the

---

[12] In two circumstances a plaintiff need not demonstrate that she actually applied for a vacant position in order to meet her *prima facie* burden—when doing so would have been futile due to "gross and pervasive discrimination" and when the employer fills a vacant position without soliciting applications. *Carroll*, 321 F. Supp. 2d at 67–68. Here, however, there is no record evidence whatsoever that gross and pervasive discrimination existed at Eli Lilly or that Eli Lilly ever filled the B2B Account Executive position without using its job posting system.

relevant time period and fails to establish that she was qualified for this position, Eli Lilly is entitled to summary judgment.

### III. CONCLUSION

For the foregoing reasons, the court concludes that Eli Lilly's motion for summary judgment [#34] must be granted. An appropriate order accompanies this memorandum opinion.

                                        Henry H. Kennedy, Jr.
                                        United States District Judge

Dated: June 13, 2006